## James G. Lindsay, trading as James G. Lindsay & Co., v. Carbon Steel Company.

*Contract—Commissions on sales.*

A construction company in January, 1895, advertised for and received bids for the superstructure of a bridge. An iron company put in a bid. The construction company being uncertain at the time of its right to build the bridge, accepted the bid on condition that the construction was proceeded with. The iron company agreed to be bound by its offer, with the right, however, to withdraw it, if after three months' notice the construction company failed to enter into a final and binding contract. On April 4, the iron company bought from a steel company through its agent, 6,000 tons of steel plates. The contract contained this clause: " We expect deliveries to commence about July 1, 1895, and to extend until March, 1896. It is understood, however, that should we for any cause, legal or otherwise, be stopped from going ahead with our contract for the superstructure of this bridge, we are to be liable only for such tonnage of plates as have been rolled or shipped." On July 2, the iron company notified the construction company that the formal contract must be entered into within three months. No such contract was ever entered into, and the relations between these two companies ended on October 2. On July 12, the iron company sent specifications to the steel company for 100 tons of plates. The steel company refused to fill the order alleging that the iron company had not complied with the terms of its contract. The agent sued the

steel company for commissions on the sale of 6,000 tons of plates. *Held,* (1) that the steel company was not justified after the receipt of the order of July 12, in refusing to carry out its contract; (2) that the agent was entitled to commissions on the plates which the steel company had the opportunity, except for its own improper act, to deliver during July, August and September; (3) that the agent was not entitled to receive commissions for the sale of the whole of the 6,000 tons, inasmuch as the iron company was not obliged after the expiration of its three months notice to take plates from the steel company.

Argued Jan. 19, 1900.   Appeal, No. 336, Jan. T., 1899, and cross-appeal No. 363, Jan. T., 1899, by plaintiff and defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1895, No. 184, on verdict for plaintiff.   Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Appeal affirmed, and cross-appeal dismissed.

Assumpsit to recover commissions on sale of steel plates. Before SULZBERGER, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,954.08.

*Error assigned* by the Carbon Steel Company was in directing a verdict in favor of the plaintiff for $1,954.08.

*Error assigned* by James G. Lindsay was in not instructing the jury to find for the full amount of the plaintiff's claim.

*H. B. Gill*, with him *Silas W. Pettit* and *John R. Read*, for James G. Lindsay & Company.—Where a broker procures a customer for goods and the seller accepts the customer as a purchaser, receives his order and undertakes to execute it, the broker has earned his commission and is entitled to recover: Restein v. McCadden, 166 Pa. 340.

The event which happened was not a stoppage within the meaning of the language of the contract.

The purchaser was estopped from setting up the event that happened in defeasance of the contract of purchase, and the sale was absolute.

The mere fact that the stoppage occurred did not in itself defeat the sale.

The event sought to be relied upon as a defeasance of the

contract did not occur until after the defendant's own refusal to deliver the plates, and the right of the plaintiff to his commissions was fixed as of the date of that refusal, and was not affected by the events which subsequently occurred.

*James W. M. Newlin,* for Carbon Steel Company.—The plaintiff failed to prove the material allegation in his statement, to-wit: that the Pencoyd Iron Works was both able and willing to take the 6,000 tons of rails contemplated in the agreement of sale.

The sale was conditional and never took effect.

The transaction did not constitute a sale: Anglo-Egyptian Nav. Co. v. Rennie, L. R. 10 C. P. 271; Benjamin on Sales (7th ed.), sec. 342a.

The plaintiff was not successful in bringing about an actual sale: Thomas v. Lincoln, 71 Ind. 41.

The Pencoyd Company was not willing to complete the sale, and never had any intention so to do, and the defendant was justified in refusing to fill the order for 100 tons, which order was not given in good faith, and was given at a time when 1,600 tons should have been specified: Reybold v. Voorhees, 30 Pa. 116; Rugg v. Moore, 110 Pa. 236; Shinn v. Bodine, 60 Pa. 185; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255; Norrington v. Wright, 115 U. S. 188; Bowes v. Shand, L. R. 2 App. Cases, 455; Browne v. Patterson, 55 N. Y. Supp. 404; Ames & Co. v. Pierson, 52 Leg. Int. 285; Trotter v. Heckscher, 5 Cent. Rep. 833; Blackburn v. Reilly, 18 Vroom, 290.

The agreement between the defendant and Pencoyd Iron Works was purely tentative and conditional, and no commissions are due thereon: Hale v. Kumler, 85 Fed. Rep. 161; Eppens, Smith & Wiemann Co. v. Littlejohn, 50 N. Y. Supp. 251; White v. Wolf, 185 Pa. 369.

OPINION BY Mr. Justice FELL, March 12, 1900.:

The plaintiff sued to recover commissions for the sale of 6,000 tons of steel plates. The plaintiff was the agent for the Carbon Steel Company, and through his instrumentality a proposal made by it to the Pencoyd Iron Works was accepted by the following letter addressed to him: "We have now to accept the offer of the Carbon Steel Company to furnish us with about

6,000 tons of universal plates for the Blackwell's Island Bridge 1.38 c. per pound f. o. b. cars, Pencoyd.' We expect deliveries to commence about July 1, 1895, and to extend to March, 1896. It is understood however, that should we for any cause, legal or otherwise, be stopped from going ahead with our contract for the superstructure of this bridge, we are to be liable only for such tonnage of plates as have been rolled or shipped."

The New York and Long Island Construction Company proposed to build a bridge at Blackwell's Island, but was unwilling to enter into final contracts for materials and labor until some questions relating to its right to build had been determined. It had advertised for and received bids, among others that of the Pencoyd Iron Works, for a part of the superstructure. It arranged with the iron works to accept its bid if the construction was proceeded with, and the iron works agreed to be bound by its offer, with the right, however, to withdraw it if after three months' notice the construction company failed to enter into a final and binding contract. This arrangement was made in January, 1895, and was pending and undetermined when the letter of April 4 was written ; and it was because of it that the provision relieving the iron works from liability for plates not rolled or shipped by the defendant was inserted in the letter of acceptance.

On July 2, 1895, the iron works, in the exercise of the right reserved by its agreement with the construction company, notified it that the formal contract must be entered into within three months. It was not entered into, and the whole transaction between these companies ended on Octoer 2. Specifications for 100 tons of plates were sent by the iron works to the defendant on July 12. The order was not filled. On July 15, the defendant wrote to the iron works : " We consider that you have not complied with the terms of your contract with us, and hence we cannot furnish you with the 100 tons of plates requested by you." No plates were furnished at any time.

At the trial there was no dispute as to the material facts. The plaintiff claimed to recover commissions for the sale of 6,000 tons of plates ; the defendant denied his right to recover anything ; the view of the learned trial judge was that the plaintiff was entitled to commissions for the amount of deliveries to which the iron works was entitled under the contract

before October 2, the date on which it terminated the contract with the construction company, and he so instructed the jury. To this instruction both parties to the action excepted, and they are here with cross-appeals.

The ground of the refusal of the defendant to deliver plates was that specifications had not been sent in time. The letter of acceptance of April 4 was preceded by a lengthy correspondence, in which the terms of sale were discussed. There does not seem to have been a definite agreement as to the exact time for delivery. On March 1, the defendant wrote, naming a price, "with the understanding that they will specify for this material so that we can begin delivery the 1st of July, this year, and deliver at the rate of about 800 tons a month until the order is completed, the entire amount to be taken out not later than March, 1896." Before the acceptance of this offer a number of letters relating to the price passed between the parties, and following its acceptance there were a number in relation to the understanding as to the terms of payment, but none of them contained any reference to the time of delivery. In the letter of acceptance it is stated: "We expect deliveries to commence about July 1, 1896, and to extend to March, 1896." The subject having been left in this indefinite shape, and no request having been made by the defendant for specifications which would have enabled it to have commenced to deliver by July 1, there was not such a failure on the part of the iron works as to justify the defendant after the receipt of the order of July 12, in refusing to carry out its contract. It was shown by the testimony that this order was sent in good faith, and with the intention to follow it by orders making the full amount of 800 tons per month. The plaintiff was therefore entitled to commissions on the price of plates which the defendant had the opportunity, except for its own improper act, to deliver during July, August and September.

Whether the plaintiff was entitled to commissions on the whole 6,000 tons is a question less free from difficulty. The iron works had the right to withdraw its proposal to the construction company, unless a contract was executed within three months after notice was given. It was not bound to the defendant for the price of plates not rolled in the event that it should "from any cause, legal or otherwise, be stopped from

going on with its contract," with its construction company. Was the refusal of the construction company to enter into a contract, a stoppage within the meaning of the contract with the defendant? The thing against which the iron works guarded in its contract with the defendant was the failure of the construction company to enter into and carry out a contract, the terms of which had been agreed upon, but which was then without binding force. A failure might be caused by the inability of the construction company to build the bridge by its refusal to contract if its right to build was established, or by its failure to carry out a valid contract into which it had entered. Any one of these would have been a cause which would have relieved the iron company from liability for the price of plates not delivered. That its own act in giving notice brought its arrangement with the construction company to an end, did not, we think, affect its rights under its contract with the defendant. It had waited three months before sending notice, and it waited three months after, while under an obligation to receive and pay for 800 tons of plates a month. There was a time limit fixed at March 1, 1896, within which all the plates were to be delivered. The iron works was not bound to wait indefinitely, and the failure of the construction company to act after notice was, we think, a cause fairly within the meaning of the contract, which prevented its execution; and the instruction of the learned judge to that effect was correct. The judgment appealed from by the plaintiff is affirmed, and the defendant's cross-appeal is dismissed.